UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

YAJAIDA BRAZLEY,

                               Plaintiff,

            v.

ADMINISTRATION FOR CHILDREN'S
SERVICES, FAMILY COURT, EDWIN GOULD
SERVICES FOR CHILDREN & FAMILIES,
ANNA STERN, BROOKLYN HOSPITAL
CENTER, ALLEN REID, LEIGH STANILAUS,
TYSHAWN LEE, NORVA JACOB BONNOR,
AIMEE AMBUSH, KEITH LITTLE, S.
HOGRATH, DR. MOBOSSERIE, AND
KRASHAWN LEE,

                               Defendants.

**MEMORANDUM AND ORDER**
16-CV-7138 (LDH) (PK)

---

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

      Plaintiff Yajaida Brazley, proceeding pro se, brings the instant action against the Administration for Children's Services ("ACS"); Edwin Gould Services for Children & Families ("Edwin Gould Foster Care"); Brooklyn Hospital Center ("BHC"); Norva Jacob Bonner; Krashawn Lee; and Leigh Stanislaus asserting claims pursuant to 42 U.S.C. § 1983 for violations of her rights under the Fourteenth Amendment to the United States Constitution, and discrimination under the Americans with Disabilities Act (the "ADA"). Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety for failure to state a claim.[1] Defendants also move pursuant to Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure to dismiss Plaintiff's claims against Norva Jacob Bonner for lack of personal jurisdiction and insufficient service of process.

---

[1] Defendant BHC has not appeared in this action and is not included in the instant motion.

## BACKGROUND[2]

Plaintiff suffers from bipolar II disorder and post-traumatic stress disorder. (Amended Complaint ("Am. Compl.") at 6, ECF No. 8.) From approximately January 2013, until late February 2015, Plaintiff received mental health treatment from New York Psychotherapy. (Pl.'s Opp'n Defs.' Mot. ("Pl.'s Opp'n") 2, ECF No. 51.) At some time prior to March 3, 2015, due to an issue with her medical insurance, Plaintiff was required to switch mental health providers. (*Id.*) On or about March 3, 2015, Plaintiff began receiving mental health treatment at Bright Point Health, and remained in treatment there through at least April 23, 2016. (*Id.*)

On April 23, 2016, Plaintiff gave birth to a daughter, KPB, at Brooklyn Hospital Center. (Am. Compl. at 6.) Two days later, as Plaintiff was preparing to leave the hospital with KPB, a nurse and supervising doctors informed Plaintiff that she could not take KPB from the hospital due to a closed ACS case against her.[3] (*Id.*) On April 26, 2016, ACS filed an Article 10 petition in King's County Family Court pursuant to the Family Court Act. (Declaration of Sharon Sprayregen ("Sprayregen Decl."), Ex. B, ECF. No. 48-2.) That same day, Family Court Judge Ben Darvil held a hearing on the petition. (*Id.*, Ex. A, ECF No. 48-1.) Plaintiff appeared at the hearing and was represented by counsel. (*Id.*)

Following the hearing, Judge Darvil issued an order granting ACS temporary custody of KPB based on his determinations that Plaintiff suffered from mental illness, had lost her parental rights as to one child, and had had her visitation rights suspended as to at least four other

---

[2] By order dated September 11, 2018, the Court indicated that, in light of Plaintiff's pro se status, the Court would consider the facts alleged in both Plaintiff's December 21, 2016 original complaint and her December 21, 2017 amended complaint. (September 11, 2018 Order.) The facts set forth herein are therefore taken from the Complaint, the Amended Complaint, Plaintiff's opposition to Defendants' motion to dismiss, and publicly available documents, of which the Court takes judicial notice.

[3] In contrast to her complaint, in her opposition, Plaintiff alleges that KPB was removed from Plaintiff's care on the date of her birth. (Pl.'s Opp'n 2.)

children.  (*Id.*, Ex. C, ECF No. 48-3.)  On or about April 27, 2019, the hospital discharged KPB to Defendant Lee, and KPB was taken to Edwin Gould Foster Care.  (Am. Compl. at 5–6.)

According to Plaintiff, KPB suffered physical and mental harm while in Edwin Gould Foster Care's custody.  (Pl.'s Opp'n 2.)  Specifically, Plaintiff alleges that, on September 13, 2016, KPB was "slammed on the bed" or "thrown across the room" by KPB's foster mother's thirteen-year-old daughter.  (Complaint "Compl." at 6, 9, ECF No. 1.)  Plaintiff alleges that ACS and Edwin Gould Foster Care were aware of the incident, but neglected to inform Plaintiff of it until a month later.  (*Id.*)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of defendants' liability for the alleged misconduct.  *Id.*  While this standard requires more than a "sheer possibility" of defendants' liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss.  *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient[.]"  *Id.* (citations omitted).

Moreover, where, as here, a plaintiff is proceeding pro se, her pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest."  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  A pro se complaint, "however inartfully pleaded, must be

3

held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 55 U.S. 89, 94 (2007) (per curiam)). This rule is "particularly so when the pro se plaintiff alleges that her civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). Still, "even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I.  Plaintiff's Fourteenth Amendment Due Process Claims

The Fourteenth Amendment to the Constitution provides, in relevant part, that no state shall deprive any person of life, liberty or process of law. U.S. Const. amend. XIV. It is well established that among the rights guaranteed by the Fourteenth Amendment is the right to familial association without state intrusion. *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (stating that the Supreme Court is of the view that "the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment."). Indeed, it is under the Fourteenth Amendment that parents enjoy a fundamental liberty interest in the "companionship, care, custody, and management of their children," which necessarily includes "the right of the family to remain together without the coercive interference of the awesome power of the state." *Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977). While this interest is not absolute, it "does not simply evaporate because [the parent] has not been [a model parent] or [has] lost temporary custody of [her] child to the State."

4

*Santosky v. Kramer*, 455 U.S. 745, 753 (1982). As such, a state's removal of a child from his or her parent's custody must comply with the requirements of both procedural and substantive due process. *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) ("[J]udicial process must be accorded both parent and child before removal of the child from his or her parent's custody may be effected."). "[W]hile a procedural due process claim challenges the procedure by which a removal is effected, a substantive due process claim challenges the 'fact of [the] removal' itself." *Id*.

### A. Procedural Due Process

As a general matter, to comport with procedural due process, a court must hold a proceeding and issue an order authorizing the forced removal of a child from a parent's custody. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999). These proceedings are typically held prior to the removal. *Id*. In extreme circumstances where it is not feasible for a court to hold a proceeding prior to the child's removal, "the constitutional requirements of notice and opportunity to be heard are not eliminated but merely postponed," and the state must hold a prompt post-deprivation hearing. *Kia P. v. McIntyre*, 235 F.3d 749, 760 (2d Cir. 2000); *accord Southerland*, 680 F.3d at 151 ("[A] plaintiff may have a viable claim for violation of procedural due process even where emergency circumstances existed at the time of removal, if the plaintiff does not receive a timely and adequate post-deprivation hearing.")

Here, Plaintiff was afforded procedural due process prior to KPB's removal from her care. Plaintiff alleges that KPB was removed from her custody on April 25, 2019, when the hospital refused to allow Plaintiff to leave with KPB, in violation of her due process rights.[4]

---

[4] In her complaint, Plaintiff cites to the Newborn Discharge Summary in support of this allegation. Notably, however, the Newborn Discharge Summary was entered on April 27, 2016, and contains no reference to any events on April 25, 2016. (Compl. Ex. A.)

5

Plaintiff's allegation fails as a matter of law.  The Court takes judicial notice of the state and family court documents related to KPB's removal which indicate that ACS filed a petition against Plaintiff for neglect of KPB on April 25, 2016; and that the family court held a preliminary hearing on the petition, at which Plaintiff appeared with counsel, and issued an order directing temporary removal of KPB on April 26, 2016.  (Sprayregen Decl. Exs. A, B, C.)  On these facts, any deprivation of Plaintiff's parental rights lasted for only one day—an amount of time insufficient to sustain a procedural due process claim.  Indeed, it is well established that a short-lived and relatively non-disruptive removal does not violate due process.  *See Cecere v. City of New York*, 967 F.2d 826, 830 (2d Cir.1992) (a deprivation of custody lasting, at most, four days is "brief" and does not violate due process).  Moreover, Plaintiff has not included any allegations that suggest that the April 26 hearing was in any way insufficient to satisfy her procedural due process rights.  On these facts, Plaintiff cannot sustain a procedural due process claim.

      **B.**      **Substantive Due Process**

Substantive due process prohibits "certain government actions regardless of the fairness of the procedures used to implement them."  *Daniels v. Williams*, 474 U.S. 327, 331 (1996).  In other words, even where a governmental action complies with procedural due process, a substantive due process claim may lie where the government's action violates an individual's fundamental rights without a compelling state interest.  *Id*.

With respect to substantive due process claims related to parental custody, the Second Circuit has recognized that there is a "compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves."  *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 104 (2d

6

Cir. 1999). To state a substantive due process claim therefore, "a plaintiff must demonstrate that the state action depriving her of custody was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011). In the Second Circuit, a parent's substantive due process claim fails where a child's removal was based on a caseworker's reasonable belief that the child was abused or neglected. *Southerland*, 680 F.3d at 152). Relevant here, under New York's doctrine of derivative neglect, "proof of the abuse or neglect of one child shall be admissible evidence on the issue of the abuse or neglect of any other child of, or the legal responsibility of, the [parent]." N.Y. Fam. Ct. Act § 1046(a)(i).

Plaintiff presses a substantive due process claim on the grounds that Defendants lacked the requisite legal bases for KPB's removal. (Pl.'s Opp'n 2.) To this point, Plaintiff highlights that, at the time of KPB's birth, there was no active ACS case against Plaintiff, and Plaintiff was compliant with her medical treatment. (*Id.*) These facts, even if true, are not sufficient to defeat Defendants' motion.

As the family court indicated at the April 26 hearing, prior to KPB's birth and subsequent removal, Plaintiff had four prior ACS findings of neglect, had completely lost her parental rights as to one of her children, and was unable to visit with her other children due to a state court order suspending her visitation rights. (Sprayregen Decl. Ex. A at 13 ("There are prior findings, as you're aware, counsel, and prior determinations and with respect to surrender but, but certainly a long history with the court and this family); *Id.* at 6 (asking the court to find that remaining with Plaintiff was contrary to KPB's welfare "given [Plaintiff's] un treated mental illness, the prior findings [of abuse] by determination, and the prior suspension of visits.").) Based on these facts,

7

Defendants had a reasonable basis to believe that KPB was derivatively neglected. Accordingly, Plaintiff's claim must fail.[5]

## II.     Plaintiff's ADA Claims

While the ADA seeks to eliminate discrimination against individuals with disabilities, its protections are not absolute. That is, the ADA provides recourse only to plaintiffs who were discriminated against on the basis of their disabilities in employment; public services, programs, or activities; or public accommodations. *See Mary Jo. C. v. NY State and Local Retirement System*, 707 F.3d 144, 152 (2d Cir. 2013) ("[The ADA] forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III.") Relevant here, Title II of the ADA prohibits public entities from excluding individuals from participating in public services, or otherwise discriminating against individuals on the basis of their disabilities. *Id*. at 152–153.

Plaintiff does not allege that she was employed by any Defendant nor that she was discriminated against in the context of a public accommodation. Instead, Plaintiff maintains that Defendants discriminated against her based on her mental health disabilities by removing KPB from her care, and interfering with her right to parent. (Am. Compl. 6.) Because this claim is

---

[5] That Plaintiff alleges that KPB was removed from her custody at birth does not save her claim. Here, Plaintiff gave birth to KPB on April 23, 2016. (Am. Compl. at 6.) Three days later, ACS filed the Petition seeking KPB's removal, and the family court held a hearing on the petition and subsequently ordered KPB's removal. (Sprayregen Decl. Exs. A, B, C.) At most, therefore, Plaintiff's pre-hearing separation lasted three days—a period insufficient to constitute a violation of Plaintiff's substantive due process rights. *See Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003) ("brief removals generally do not rise to the level of a substantive due process violation, at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal."); *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 549 (E.D.N.Y. 2013) ("A six-day separation does not constitute a violation of [a mother's] substantive due process rights."); *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 368 (S.D.N.Y. 2010) (no substantive due process violation where removal occurred Friday and judicial proceedings began Monday).

cognizable only under Title II of the ADA, it may only be maintained against a public entity. *See Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 44 (2d Cir. 1997) ("Title II of the ADA and section 508 of the Rehabilitation Act prohibit discrimination based on a disability by a public entity."); *see also Mary Jo.*, 707 F.3d at 152 (stating that Title I prohibits discrimination in employment, and Title III of the ADA prohibits discrimination in public accommodations). As such, to the extent that Plaintiff purports to assert her ADA claim against Defendants Edwin Gould Foster Care, Lee, Stanilaus, and Bonner, Plaintiff's claim must fail.

With respect to Plaintiff's ADA claim against ACS, even if the Court were to construe the claim as properly asserted against the City of New York, it would nonetheless be dismissed. Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Innovative Health Sys., Inc.*, 117 F.3d at 44. (quoting 42 U.S.C. § 12132.)[6] To defeat a motion to dismiss, a plaintiff asserting a Title II ADA claim must allege that: (1) she is an otherwise "qualified individual" with a disability; (2) she was excluded from participation in a public entity's services, programs, or activities, or was otherwise discriminated against by a public entity; and (3) such discrimination was due to her disability. *Schweitzer v. Crofton*, 560 F. App'x 6, 10 (2d Cir. 2014).

Here, Plaintiff alleges that ACS's removal of KPB was discriminatory because Plaintiff was compliant with her mental health treatment regimen, and had no active ACS case against her at the time of KPB's removal. (Am. Compl. 6.) Here again, these facts, even if true, are

---

[6] The Rehabilitation Act contains similar language. 29 U.S.C. § 794(a) ("No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance").

9

insufficient to state a claim under the ADA. In other words, Plaintiff has not demonstrated that she was otherwise qualified to care for KPB, particularly in light of the family court's finding to the contrary. *See Morrison v. Comm'r of Special Servs. of City of New York*, No. CV-94-5796, 1996 WL 684426, at *4 (E.D.N.Y. Nov. 18, 1996) (finding that the plaintiff could not demonstrate that the was a qualified individual where the family court had ruled otherwise, and stating that "it is not within the authority of this Court to question that ruling, that plaintiff is not qualified to act as a parent to her children").

\*   \*   \*

Defendants correctly contend that all claims asserted against Defendant ACS must be dismissed because ACS is not a suable entity under New York City law. Section 396 of the New York City Charter provides that "actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter § 396. As such, courts in this circuit have routinely dismissed claims brought against New York City agencies. *See, e.g.*, *Charles v. ACS King*, 2017 WL 384323, at *2 (E.D.N.Y. Jan. 25, 2017) (dismissing claims against ACS because it is not a suable entity); *Taylor v. City of New York*, 2015 WL 9412543, at *3 (E.D.N.Y. Dec. 22, 22015) (dismissing claims against New York City agencies because they are not suable); *Worrell v. City of New York*, 2014 WL 1224257, at *3 (E.D.N.Y. Mar. 24, 2014) (dismissing claims against ACS because it cannot be sued). Accordingly, Plaintiff's claims against Defendant ACS must be dismissed. Additionally, even if Plaintiff had properly asserted her claims against New York City, her constitutional claims against it would fail given the Court's findings on the merits of Plaintiff's claims. In other words, because the Court has found

that Plaintiff failed to sufficiently allege a constitutional violation on these facts, she cannot proceed with a *Monell* claim against the City of New York.[7]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for failure to state a claim is GRANTED and Plaintiff's claims against Defendants ACS, Edwin Gould Foster Care, Bonnor, Lee and Stanislaus are dismissed in their entirety. Because Plaintiff has already been given an opportunity to amend, the complaint is dismissed with prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). Plaintiff is ordered to show cause within 30 days of this memorandum and order as to why her claims against Defendant BHC should not be dismissed for failure to state a claim.

SO ORDERED.

Dated: Brooklyn, New York  
      March 30, 2020

/s/ LDH  
LASHANN DEARCY HALL  
United States District Judge

---

[7] Having determined that Plaintiff's claims against Defendants ACS, Edwin Gould Foster Care, Bonnor, Lee and Stanislaus fail on the merits, the Court need not address Defendants arguments in support of their motion to dismiss Plaintiff's claims against Defendant Bonner for lack of personal jurisdiction and insufficient service of process.